Before we start our proceedings this morning, I'd like to turn to Judge O'Malley for a motion. I have the pleasure today of moving the admission of Ryan Iwahashi, who is a member of the Bar and is in good standing with the highest court of the State of California. I have knowledge of his credentials. In fact, I have intimate knowledge of his credentials because he is my current law clerk and has been for the last 18 months. Ryan was a graduate of Berkeley Law School and also has both a bachelor's and a master's in computer science. So he is really just one of the smartest people that I've known in this area and I've been very happy to work with him. Ryan's also a wonderful guy, even if he's desperate to get back to California and out of the heat here in D.C. We have a lot to congratulate Ryan for, not just joining our Bar today, but moving on back to California, back to Gibson Dunn, and he is here with his wife. Where is she? Where's Mabel? And Mabel is going to have a baby girl. Well, they're both going to have a baby girl. So a lot of congratulations to Ryan. So I moved his admission and the honorary admission of their baby girl to the Bar. Do I take a vote? If Judge Newman doesn't mind my speaking on her behalf, we enthusiastically grant the motion. And this is a first. I'm allowing babies into the Fennell State Bar. We're particularly enthusiastic about that. Do you solemnly swear or affirm that you will report yourself to an attorney and counsel to support the Constitution of the United States of America? I do. Congratulations. Congratulations. Welcome. Now turn to our first case this morning, 14-1602, Personal Web Technologies v. EMC. Mr. Belander. May it please the Court. Though six IPR proceedings have consolidated here, I would like to focus my argument today on the legal issues raised by one, the IPR on the 791 patent. And if I have time, I'll also briefly address the 096 patent. Now the new IPR proceedings are generating a substantial number of appeals, but a written decision here provides an opportunity to lessen the burden on the Court going forward and to increase the accuracy and dependability of the decisions being appealed by clarifying the legal rules that must govern these PTAB proceedings, including in particular the proper construction of means plus function terms under the BRI and proper application of the rules of anticipation. Now regarding claim construction, Claim 1 recites two means plus function elements and the PTAB misconstrued both with mirror image errors. Now for the first, the PTAB assumed that under the BRI it could adopt the broadest possible structure that could perform the claim function rather than the corresponding structure actually described in the specification. Now for the second, the PTAB assumed that under the BRI it could adopt the broadest possible function that could be performed by the structure in the specification rather than the function expressly recited in the claim. Can we start with identity means, which is where you started, right? Yes. Just to pull back a minute, even if we were to agree with you on the claim construction issue here, isn't it the case that even if we adopted your claim construction, the one that you were advocating, it comes out the same way because then we're into the alternative obviousness conclusions of the PTAB board. So if I'm right about that, why don't you tell me under an obviousness analysis, using even your claim construction, which the PTAB did as an alternative, you should prevail under substantial evidence, I guess, right? That's where we can end up in the identity means, notwithstanding your argument that this is a legal issue and this has to do with global questions about the AIA, right? I don't believe that's right, Your Honor, because what the PTAB found, now the obviousness analysis for the 791 essentially consists of the finding that there are no holes to fill and there was a brief discussion about whether it would be obvious to add an MD5. So that's the point EMC says, well, there's nothing more to see here. Well, the MD5 was in the prior arc, right? That's absolutely right, and the MD5 is one part of what is disclosed in the specification. Now EMC agreed, this was EMC's proposal, and we agreed that the corresponding structure is, quote, the mechanism for calculating a true name disclosed in figures 10A and 10B. Now that's in the specification columns 12 to 14, and if you look at 14 in particular, that's where it discloses this mechanism for calculating the true name. Now 10A is one step within 10B, and 10A involves the MD5. That's what we're calling the cryptographic hash. Now 10B discloses, and this is one embodiment. It starts at step 216, goes down to step 218 is 10A, and on the other side is the recursive MD5 essentially. And so our position is that the claim construction requires, just as EMC agreed, 10A and 10B. So there is no discussion anywhere in the obviousness analysis of that recursive functionality. That is clearly, under microchemical and Donaldson, that is clearly, in fact, the specification makes clear, column 14, 39, this is the preferred embodiment, 10A and 10B together. So there is no obviousness analysis that covers that. Now even if that were true though, even if identity means were okay, you still have the existence means. That's the very next element. The existence means says, and in the institution decision, the PTAB said, this is, got it right, for determining whether a particular data item is present in the system by examining the identifiers of a plurality of data items. Now the PTAB acknowledged at the hearing it said, it sounds like the dispute here is about what is the proper scope of the function under the BRI. That's it, A1069. Then in the final written decision, A53, it rejected our argument because it was, quote, the claimed function associated with the existence means simply encompasses determining whether a file exists in a registry or table. So it effectively read out the system and plurality of identifiers elements from the function. Now, and what it did was, here, while before it looked at... Can I just see if I'm understanding your argument right? There are a lot of issues presented by this appeal, which my sympathies to you and also to us as well. But the PTAB, except for the one sentence that you've just cited to us, the PTAB used the word system consistently, right? Am I wrong about that? I mean, the PTAB was saying in the system, and then your argument is that at some point in the game, they had this quote that says in a table or registry, so they changed their claims instruction. Is that what you're telling us? Well, the PTAB did talk about system. Now, in our position, it was saying two different things. It was basically, the evidence was that, is this object at a particular location in a file? And we have lots of testimony from their experts saying, well, it doesn't tell you what's in the system. It tells you what's in the file. Now, the PTAB did talk about system, but I would point the court to particularly examining a plurality of identifiers. So your view is that more than one can't be encompassed within the phrase plurality? Oh, more than one is. But, Your Honor, what the PTAB did, after construing the term this way, and what it did, it looked at the specification and said, well, what we see a structure here is a true file registry, which is a registry of true names. And then it looked at Woodhill and it said, well, we've got here a database that has a lot of identifiers in it. So, therefore, that's the same thing. But the claim doesn't call for a registry with multiple identifiers, with more than one identifier. It calls for determining in the system by examining the identifiers of a plurality of data items. In other words, the function is comparing more than one data item. And the PTAB found, this is at 54 in its written decision, it found that Woodhill satisfied this because it compared an identifier to its counterpart, which is how Woodhill works. Woodhill doesn't look at a whole bunch of identifiers. It wants to decide, has this particular part of this particular file changed? And it decides that by going to the file, going to the right offset location in the file, and then comparing the current identifier with the one that's found there. If they're different, it's a one-to-one comparison. It's not a plurality comparison. If they're different, it swaps them. If they're the same, it does nothing. Okay, this is where, I mean, this is sort of squishing two issues. I mean, you made this very clearly, and I understand why, as a claim construction issue. I think now you're moving into an area which you really didn't press, which is whether or not there's substantial evidence to support the anticipation finding on this, right? I mean, am I parsing them the wrong way? Am I missing something? I mean, this isn't really a claim construction argument, then, with regard to what's in Woodhill. It seems more just a substantial evidence question on anticipation. If the court wants to look at it as a substantial evidence question, it can. But I do think this is a claim construction issue because the point is that the court first said, this is what the claim encompasses. And then it found something that encompassed this construction in the prior art. So the point about describing Woodhill is more to show you that it was harmful, that the claim construction was harmful. Because, in fact, Woodhill never, the PTAP never asked, does Woodhill compare a plurality of identifiers? It never asked that question. So we would then have to agree that BRI doesn't apply. Is that right, in order to accept your argument? Oh, not at all, Your Honor. The BRI does apply. And, in fact, if you look at Donaldson, the court in Donaldson said, yes, the BRI applies to means plus function claims. And here's how it works. It said the broadest reasonable interpretation is the one mandated by the statute. And in In Re Tellus AG, this court held that the PTO, under the broadest reasonable interpretation, could not rewrite a function based on the structure and the specification, which is what happened here, nor can it adopt a function different from that expressly recited in the claim. In other words, the BRI is governed by statute. And that's what this court has clearly held. And the PTAP just simply got that wrong. It thought, well, we're doing the broadest reasonable here, so therefore I'm not bound by what's in the specification. In fact, that's explicitly what it held at A45 with respect to the identity means. You can read that. It gave as the reason for its construction that there was no requirement to construe the term to cover the structure disclosed in the specification. And that's just flat wrong under the law. But doesn't the patent itself describe the structure? Now we're talking about the existence means, but as your friend on the other side points out, the patent does describe looking for an entry for the true name in the true file registry. And that's as it's describing step F232. That's exactly right. And we agree with the construction of the structure. But the point is that the PTAP did what the court said couldn't be done until it's AG. It's the same thing. It looked at the structure and then said, well, based on the structure, what's the broadest possible claim, the broadest possible functional language that makes sense? But what you need to do is you need to have the structure and you need to have the function. So you need to have a structure. You need to have a file with a plurality of identifiers in it, and then you have to have the function being satisfied, whereas the reference is disclosing what's in the system based on an examination of a plurality of identifiers. So essentially the court, it correctly looked at the right structure, but it never found that that structure met up with the right function. If I could briefly turn to anticipation, there's a couple of issues there. I don't know if I'll have time to get to both, but the first is misapplication of the rule of net money in. Now, this is for Claim 41. Claim 41 requires accessing a data item using the identifier, whereby accessing further encompasses determining whether the data item is present and then fetching it if it's not present. Now, what the PTAB did was it said the audit procedure satisfies accessing. Now, that's described to call it gates in the Woodhill. And the backup procedure satisfies determining and fetching. But the PTAB even recognized that the audit procedure, which it said access, comes after the backup procedure, which it said determined and fetched. So, A, it doesn't make sense, but B, under net money in, you can't combine these distinct functions. Now, what the PTAB held, it considered this issue as a legal matter and it said, no, we can, net money in is okay here because the specification says that these distinct functions, quote, unquote, can operate with other functions to form one unitary computer program. But isn't there a distinction between net money in in that, in that circumstance, the protocols were mutually exclusive and that's not what we're talking about here? I think we are, in fact, what we're talking about here is even worse because the protocols not only are different, they come in the reverse order. But anyway, the point of net money in, the fundamental point, now, the mutually exclusive, net money in did note that in a footnote, but that wasn't the basis of the holding. The basis of the holding is that the elements need to be arranged as in the claim, and here they're clearly not. And furthermore, the idea that what the PTAB said was the sort of critical question was whether one computer program could run these separate functions. But they need to be arranged as in the claim if, in fact, the arrangement makes a fundamental difference, right? That's right. But, I mean, if the arrangement really doesn't matter for how the patent operates, unlike net money in, that, you know, just taking that sort of general concept from one case and importing it to another doesn't necessarily work if, in the second case, the arrangement isn't critical to the operation of the system. Well, I think the arrangement is critical here. How can you determine something as local if you haven't first accessed it? So, I mean, this is even, to me, this is even stronger than net money in, because this is a case where it's like the ingredients, you know, where you have to do step one, step two, step three, and they're not disclosed that way. There's no question. And if the PTAB's rule is right, that the point is you look for whether one computer program can do it, then you could combine procedures from a startup operation and a shutdown operation because they both are run by a Windows operating system. So that just can't be the right way to go. If I can address one more issue very quickly, and that is what we're calling the Theracense error, the crediting a hypothetical embodiment, and this is with respect to the accessing a data item, which the PTAB assumed in the claim I just talked about. But Theracense requires either express or inherent, and I'm sorry, I didn't realize that. Why don't you finish your point? Okay, and there's neither express nor inherent teaching of access using identifier. And what the PTAB held was that there was no need to explain because it was old and well-known. That's at 67 and 68. But that is not a proper anticipation analysis. Okay, thank you. We'll restore three minutes of rebuttal, and we'll add three minutes to Mr. Lee's time. Thank you very much. Thank you. Good morning. May it please the Court. My name is Bill Lee, and together with my partner, Cindy Vreeland, I represent EMC and VMware. There are actually no legal issues that the panel is required to address to resolve this appeal. All of the issues can be resolved on a substantial evidence basis. And what I'd like to do is very quickly run through why, and then come back to identity means, existence means, and Claim 41, if that's all right with the panel. The reason I say that there are no legal issues is the following. For identity means, there is a factual finding that Woodhill plus MD5 renders the claims obvious. The only argument that has been made by Personal Web in response to that is, but the Board didn't find that Woodhill plus MD5 taught a hash of hashes. But for Claim 1, that's not required, and we know for three reasons. One, the patent says it's not required. Two, their experts say it was not required. And three, those are the two reasons based upon what is in the intrinsic evidence. Those two reasons by themselves demonstrate that the hash of hashes is not required. So are you saying that for purposes of the obviousness analysis, the claim construction is irrelevant? Yes, for this reason, Your Honor. What the Board said in... Wait, we're talking about identity. Just to be clear, we're talking about identity means. Yes, correct, just talking about identity means. So for identity means, there's an alternative finding or alternative holding, which was Woodhill plus MD5, which is undisputedly an identity means, it's preferred embodiment, renders the claim obvious. The only response, which is at page 9 of the reply, is that it doesn't disclose the hash of hashes. And I said there are three reasons that doesn't work. One is the patent. Two is what their expert concedes. And the third is the fact that Claim 19, which is dependent from Claim 1, actually claims a hash of hashes. So that broader Claim 1, applying claim differentiation principles, would be broader than just a hash of hashes. But I thought, I actually thought the answer to Judge O'Malley's question might just be, and maybe it's just my simplistic analysis, is that I thought the Board, in reaching its alternative obviousness conclusions, relied on the claim construction of the other side, in terms of the cryptographic stuff. So I think it's not a question of ignoring claim construction for obviousness. It's just saying they applied their claim construction and still reached the obviousness conclusion. Your Honor, you could certainly articulate it that way. I guess another way to say it is MD5 is an identity means within their claim construction, indisputably. So that, Your Honor, if that was your question, the answer is their claim construction identity means includes MD5. MD5 is what's been combined with Woodhill to render it obvious. That's a substantial evidence question. For existence means, there was no rewriting of the claim interpretation. At A20, you will find the Board's claim interpretation where they define the function and they define the structure. When you get to page A55, they apply that claim interpretation to Woodhill. And what they do is not redefine the claim interpretation. They simply take what they did at page A20 and say, the structure includes step S232. None of us disagrees with that. Step S232 is looking in the true file registry. And then it says Woodhill does just that. So they've taken the function they've defined, they've taken the structure which we actually both agreed upon, and they said S232 is looking up in the true file registry and Woodhill does that. But didn't it seem like they sort of went backwards here? They said we're going to find a structure and then we're going to say that the function is whatever that structure would get us to? Your Honor, I think that's the way to try to be frank. But I think if you actually follow their logic which is start at page A20 where they're actually doing the claim interpretation, and then when they get to S55 what they're doing is taking that claim interpretation and trying to deal with the competing intentions of the two parties as to whether Woodhill satisfies or not. So they say here's the function, here's the structure, and the structure, S232, is looking up the true file registry. But they actually made findings that are completely inconsistent with what Personal Web represents to you. In terms of looking broadly through the system, if the Court turns to column A, line 63, and this is the portion that the Board expressly relied upon in Woodhill. This is at A2841 in the bottom right-hand column. Woodhill says in this way... I'm sorry, what are we looking at now? The 196 patent, Your Honor. Okay. Column 8, it's A2841. There are two important parts that I'd like to draw the Court's attention to. In column 8 at line 63, you will see in this way duplicate binary objects, even if resident on different types of computers in a heterogeneous network, can be recognized from their identical binary object identifiers. So you're looking across the system in a heterogeneous network. And then if you turn back just to A2838, and the Board specifically relied upon that in comparing the function to the function of Woodhill. If you turn back to A2838, column 2 of Woodhill, to line 33, and right after the parenthetical for parenthetical, it describes Woodhill as comparing the current value of the binary object identifier associated with a particular binary object to one or more previous values of the binary object identifier associated with a particular binary object. So the Board did ask... This is a substantial evidence question we submit. It defined the claim interpretation, function, structure. It then talked about, when you get 30 pages later, the performance of the function and referred specifically to column 8. And then it said, now let's look at the structure that performs this. It's specifically disclosed in Woodhill. And all they did with the TrueName Registry is to say, the disclosed structure is the TrueName Registry. I can compare that structure to Woodhill. It's there. It's a substantial evidence finding, but it also is... Isn't there a substantial difference between looking at one location to see if something is there versus looking at a totality of a system to see if something is there? Well, two responses, Your Honor. I don't think either of us contends you have to look at the totality of the system. The patent itself suggests, and they're experts, that you would look to without the system. But you might look at more than one location, and the Board acknowledged that. And that's one of the reasons they referred to column 8, line 63. So to the extent that you have to look at more than one location, both column 2 and column 8 tell you that you do. And then the fight... But it still seems that Woodhill is contemplating looking at a particular location. It's looking at a... Versus a broader search. It's looking at... Actually, in a specific embodiment, they look at a location on a font. But when you get to the summary of the invention at column 2, they're looking at one or more previous values, and then you're looking at a heterogeneous network at column 8. And even Dr. Dewar, their expert, concedes that in the preferred embodiment, when you go to the true file registry, you're looking at a subsection of the true file registry. You're not looking throughout the true file registry. It would make no sense to do that. That's what the Board was addressing when it addressed existence needs. As we say, I think identity means Woodhill plus MD5. Existence means focusing on A20 to A55 are substantial evidence questions, but the Board, we also suggest, got it correctly. If I turn to Claim 41 and this question about backup, audit, restore, this is a substantial evidence question as well. And I think this is a place where, if I could draw the panel's attention to A79, which is the Board's opinion, I think, Judge O'Malley, to go to your question about the order of events, you'll actually see that they didn't reverse the order of events. In Woodhill, there is—Woodhill itself is largely a backup procedure, but it has three different components. It has a backup initially, then it has an audit, then it has a restore. And the idea that the Board got it reversed is simply wrong. And if you start at A79, and I apologize for going through in detail, but if I take you to four different sentences, I think you'll see that they got it right. They got it in the right order. They got what Woodhill did correctly. So at A79, if you look at the last sentence of the first—last full paragraph, it begins, In its reply, you will see at the end it cites EMC's reply. That is actually the reply citing for the restore function. Backup, audit, restore.  In the next paragraph, it begins, According to Woodhill, it describes the first backup procedure. But then if I turn you to page A80, and I look at the last sentence of the first paragraph, it begins, Therefore, if a binary object ever was lost or destroyed at an entire site, e.g., disk drive 19 on local computer or remote backup file server 12, Woodhill indicates that a copy of the binary object stored in another storage area may be copied to that site, and it cites column 9, lines 39 to 45. That is the restore. You've backed up. You've now done an audit. You find out there's a problem, lost, destroyed, and you restore. And column 9, lines 39 to 45, is the portion of Woodhill that talks about restore. In the next two paragraphs, you'll see that the board specifically refers to the data being lost, destroyed, or no longer present. Well, that only happens after you've backed it up the first time. You've audited to find out, and then you restore. And both of the next two paragraphs are describing what Woodhill discloses about restoring data that was initially backed up. So the argument that the board got it absolutely in reverse is just inconsistent with what Woodhill said, because Woodhill says we back up, we audit, we restore if lost. The board specifically went through the same discipline, and as a factual matter, found that Woodhill discloses exactly what is claimed in Claim 41. Again, it's substantial evidence, but it's correct as a matter of what Woodhill says, and it's surely correct. I may have this confused. There were so many pieces to this case. But I recall that the board relied extensively on Dr. Clark's testimony in combination with what was disclosed in Woodhill to reach the result it did with regard to accessing. Am I getting this confused with another patent? They relied on Dr. Clark for accessing as well as other patents. But in this particular section, Your Honor, what you'll see is that what they relied on here is actually the disclosure of Woodhill. For the issue that was raised before the panel this morning, they did rely upon Dr. Clark. What they said consistently was we rely upon Dr. Clark because his testimony is more consistent with the disclosure of the prior art as we read the prior art. It wasn't just we believe A but not B. It was looking at this issue on this piece of prior art, we find his testimony to be more consistent with that. But on the issue that is Claim 41 issue, the pages A79 to 81 in Woodhill resolve them because it's in the prior art. It's what the board said. And the idea that they got it reversed is just inconsistent with what's said here. Very quickly, let me just address the fair sense and that money in issues. We don't dispute that those are holdings of the court. But the holdings don't apply because the board found as a factual matter they didn't apply. They found consistently for Woodhill, for Cantor, for Langer that they all disclosed unitary systems that were intended to work together. And in fact, the board noted that in the 791 patent, the system had two components, calculating a true name and then a true name file registry and what you would do with it. They were part of the same system. On the net money in issue, without a doubt, the decision itself says in the footnote that the protocols are mutually inconsistent. That would preclude combining them. What the board said here was that principle doesn't apply because these are all part of a single system. And the same is true for fair sense. Fair sense, we don't dispute, says there's a legal proposition that you can't have a hypothetical embodiment of the prior art. What it doesn't say is that every embodiment of a particular piece of prior art is hypothetical. And what the board found for Woodhill, what the board found for Cantor, and what the board found for Langer was they were actual embodiments that were actually disclosed to do precisely the same thing. Before my time, I'd just like to address one more item that wasn't raised and that's the question of the data item of the 096 patent. What I'd like to do is, while it's been argued as a legal issue, I'd like to just close by saying why it also is a factual issue that is determined by substantial evidence. The board's determination of what a data item was was the collection of inner files in Cantor. That's what they found as a matter of fact. There is no doubt that that collection of inner files is a collection of non-overlapping parts, which is what the patent says. And a sequence of bits, that's what the board found. The only argument made to you is that the claim should be construed to not only require no overlapping parts, but also no intervening gaps. That would be incorrect legally, but it doesn't matter. Because what the board found to be the data item, which is the collection of inner files, has no intervening parts, no overlapping parts, no intervening parts, no overlapping gaps. So again, even if you accepted the claim interpretation argument, which we believe is incorrect, factually, the fact of finding to the board would still result in the claims being invalid. Thank you. Thank you. If I may quickly, on that last issue that was just addressed, I would just say this. Here's the quote from 469. The parts or files make up the sequence, even with metadata included between the parts. So that was the court's finding. It wasn't that there was no parts between the parts. It was that it could ignore the parts. That is a legal issue. But it said it could ignore the parts as long as it found that there was a sequence that was on either side of the parts, right? Right, that's right. But, I mean, and that's the legal question. Can you have a sequence with intervening non-sequence parts? And that's what the court said. And I think the key there is the word consisting of. That's a term of art the same in the PTO as anywhere else, and it excludes the intervening parts that the PTAB said could be included. Now, with respect to the issue of the net money in issue, counsel says that it was really talking about the restore. I would just point the court to 79 in the appendix, and here's the title. Woodhill's backup procedure discloses the determining and fetching elements recited in Claim 41. The court did not look to the restore. And Figure 5J shows the restore, and it shows Step 1, get the object. Step 2, restore. Step 3, calculate the identifier. So Woodhill does not teach using the identifier for that. One more, if I may very quickly address this Column 2 line where it says one or more previous values suggesting that, well, maybe they're talking about a plurality of identifiers. That's not the case. And it's loose language here, but if you read it, it's clear. It means for comparing the current value of the binary object identifier. What line are you on? I'm sorry, this is Column 2 of Woodhill, line 1112. It means for comparing the current value of the binary object identifier associated with a particular binary object to one or more previous values of the binary object identifier associated. So we're talking about one identifier. It's just talking about previous values. So you're comparing the current with the old values. Now, really, there's only going to be one, but the point is it might have changed more than once, but you're always comparing one identifier with another. That's the teaching of Woodhill. And the heterogeneous comment from Column 8 that he referenced is just saying it doesn't matter whether you open up the file on a Mac or an HP computer. It's going to be able to make this determination. And with respect to the claim construction issues and the obviousness finding, I think that's looking at it backwards, that there can be no proper obviousness finding that's not based on the right claim construction. And the court did not consider our claim construction. It just considered the MD5 issue. On top of that, the PTAB, sorry, the PTAB, it just said there's no holes to fill. But we've identified a number of holes here with the net money in issue and crediting the hypothetical embodiments and the claim constructions. So I think the key point is that... Do you want to wrap it up? Yes. I can do that. Thank you. I would thank both counsel and the cases.